**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TTA SERVICES LLC d/b/a THUNDERBOLT SIGNS** | |
| **Plaintiff** | **CASE NO.** |
| **v.** | |
| **DEEP SOUTH SIGNS LLC and MORGAN DESCANT** | **JUDGE** |
| **Defendants** | **MAGISTRATE** |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, TTA Services

LLC d/b/a Thunderbolt Signs ("TTA"), which brings this action as follows:

### INTRODUCTION

1.

Plaintiff is a commercial sign installation company that as part of its business submits bid

quotes to national sign companies for installation of the national company's customers. National

sign companies utilize companies like Plaintiff as subcontractors to complete the installations in

geographic areas where the national companies cannot complete the installations themselves.

Plaintiff has been performing these services for nearly ten years.  For many years, Plaintiff was

consistently successful in bid quotes to national sign companies in the State of Louisiana and

throughout the Gulf South.

1

2.

However, Plaintiff has recently discovered that a competing sign installation company is engaged in a fraudulent kickback scheme that is damaging the competitive market and Plaintiff's sales specifically. The competing company, Deep South Signs, is owned and controlled by someone that has a history with Plaintiff which is discussed herein. Deep South Signs has historically bid on the same projects as the Plaintiff, and it has now come to light that Deep South Signs is bribing a key employee of at least one national sign company in order to gain the business from that national sign company.

3.

Deep South Signs has secured numerous contracts which would have otherwise been awarded to Plaintiff and has done so through the influence of the key employee with whom it is paying bribes or kickbacks.

4.

This fraudulent, deceptive, and unfair practice has deprived Plaintiff and the other competitors potentially millions of dollars of projects over the last several years and has raised costs for the national sign company's customers. Immediate injunctive relief is necessary to prevent this fraudulent conduct and level the competitive playing field. Thereafter, Defendants should be held accountable to pay Plaintiff the damages it has sustained.

## PARTIES

5.

Plaintiff, TTA, is a limited liability company organized and existing under the laws of the State of Louisiana with it principal place of business in Baton Rouge, Louisiana.

6.

Made Defendants herein, are:

(a) Deep South Signs LLC a limited liability company organized in and under the laws of the state of Louisiana with its principal place of business located 17321 Airline Hwy Prairieville, LA 70769.

(b) Morgan Descant is a person of full age of majority residing in East Baton Rouge Parish.

## JURISDICTION AND VENUE

7.

This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337 because it concerns the regulation of commerce, and 18 U.S.C. § 1964(c).

8.

This Court has supplemental jurisdiction over Plaintiff's Louisiana Unfair Trade Practices Act and state law claims pursuant to 28 U.S.C. § 1367.

9.

Venue is proper in the Middle District of Louisiana under 28 U.S.C. §§ 1391(b)(1) and (b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in East Baron Rouge Parish, Louisiana and within this judicial district.

**BACKGROUND FACTS**

10.

TTA's operations including the bidding for the installation of commercial signs for stores and other businesses that utilize national sign companies for the creation and installation of signs for the business' new locations as well as replacement signs at existing locations.

11.

The national sign companies utilize companies such as Plaintiff to obtain the necessary permitting for and the construction of pylon signs and building mounted signs where the national sign companies do not have installation crews.

12.

Plaintiff performs these services predominantly in the state of Louisiana but also performs work in in Mississippi, Alabama, Florida, Arkansas, Tennessee, and Texas.

13.

TTA Services LLC was formed by Gene Bagot in 2017.[1]

---

[1] TTA rebranded as Thunderbolt Signs in May of 2022.

4

14.

Defendant, Morgan Descant was the principal of a company named Morgan Signs, LLC, which was in the commercial sign design and installation business.

15.

On November 13, 2017, TTA and Morgan Signs, LLC entered into an asset purchase agreement under which all of the assets of Morgan Signs, LLC were to be sold and transferred to TTA.

16.

The transaction closed in March, 2018.

17.

As part of the agreement, Morgan Descant agreed to remain as a paid consultant to TTA for two years after the sale.

18.

As consultant for TTA, Morgan Descant determined installation methods for numerous jobs, supervised crews, and directed work activities.

19.

Morgan Descant also agreed not to conduct any separate and independent commercial sign operations business for a two year period.

20.

At the expiration of two year consultancy period, Descant signed an extension on the agreement not to compete on February 20, 2020, and agreed to stay on as a consultant for two more years.

21.

However, unbeknownst to Plaintiff, Morgan Descant formed the company that would become Deep South Signs, LLC, a commercial sign business, on or about October 29, 2019.

22.

Descant formally left TTA on or about September 29, 2021.

23.

TTA brought litigation against Descant in the 19th Judicial District Court for the State of Louisiana on or about October 22, 2021 seeking to enforce the non-compete agreement, among other things.

24.

A settlement was reached in September 2023 with TTA and its principals and Descant.

25.

TTA and Deep South Signs, LLC continue to operate separate and distinct commercial sign operations.

26.

In May of 2025, Plaintiff began to receive information that Descant had embarked on a

fraudulent scheme to unfairly compete in the commercial sign installation market in the state of Louisiana and throughout the Gulf South.

27.

The allegations against Deep South and Descant subject of this Complaint are separate and distinct from the claims in the prior litigation and are ongoing.

28.

Shortly after the resolution of the previous litigation, TTA began noticing that the rate of success on bids for installation contracts of several of its primary accounts was becoming less and less common.

29.

The decline on these accounts continued through 2024 and into 2025, and receipts from nine national sign company accounts, which were believed to be affected by the fraud, were less than 10% in 2025 of what they had been in 2022.

30.

Commonly, national sign companies maintain a stable of local installation companies to perform their installations. In many cases, one or more project managers employed by each national sign company are responsible for selecting from their stable of local installers in particular geographic areas.

31.

While certain project managers are commonly given some level of discretion in choosing the local installer, a bid process is usually a key feature in the selection.

32.

The reason for the decline in national sign company receipts became plain when Plaintiff discovered information that Descant has engaged in a years long bribery and kickback scheme with at least one project manager with at least one national sign company.

33.

The employee of one of the national sign company's, referred to herein as Company A, is a project manager in charge of procuring bids for commercial sign installation in the state of Louisiana and throughout the Gulf South.

34.

Company A has been a staple of TTA's business from TTA's inception.

35.

Company A and the project manager both reside outside of Louisiana.

36.

It is further apparent that Company A is unaware of the scheme as Descant and the project manager have gone to great lengths to conceal the scheme from Company A.

37.

The comprehensive bribery and kickback scheme features Descant utilizing interstate banking systems by electronically transferring funds, and commercial courier services crossing state lines, to pay a portion of the fees from awarded contracts back to the project manager, typically in the amount of 10% of the invoiced amount of a particular project.

38.

As additional inducement, it is believed that Descant has provided other goods and services to the project manager.

39.

Descant has encouraged and the project manager has agreed to send all of Company A's commercial sign installation projects in Louisiana and Mississippi to Deep South Signs.

40.

She has also directed projects to Deep South Signs for installations in Alabama and Texas.

41.

The project manager has shared competitor pricing with Descant in connection with his preparation of bids.

42.

The project manager has also educated Descant in the best way to maximize the amount of his bids to the detriment of the national sign company and its own customers, including the inflation of the amounts charged relative to permitting that are commonly elements of an invoice that meet little scrutiny.

43.

The scheme continues to this day.

44.

It is believed that the scheme involves project managers with up to eight national sign

companies.

45.

The information has revealed that, while discovered less than a year ago, the scheme has been ongoing for at least 4 years and it is estimated that for Company A alone, the value of the invoices for the installation services that are part of the bribery and kickback scheme total over $500,000.

46.

In addition to the bribery/kickback scheme, Descant has disparaged Plaintiff and its principals to the project manager in an effort to convince the project manager to have alleged justification for ceasing to use Plaintiffs.

**CAUSES OF ACTION**

47.

As discussed above, Defendants have perpetrated and continue to perpetrate a scheme to provide kickbacks to at least one individual in order to unfairly compete and obtain jobs in at least the states of Louisiana, Mississippi, Alabama, and Texas.

48.

Defendants have used interstate wire communications, including emails, electronic fund transfers, and telephone network communications, to coordinate kickback payments and contract awards.

49.

On multiple occasions, electronic payments were transmitted across state lines to

facilitate the scheme, along with the use of commercial carriers for some payments.

50.

Defendants transmitted materially false and misleading communications regarding the impartiality and legitimacy of the contract selection process.

**COUNT ONE: VIOLATION OF 18 U.S.C. § 1962(c)**

51.

Plaintiff re-alleges and incorporates the preceding paragraphs.

52.

Defendants conducted and participated in the conduct of the enterprise's affairs through a pattern of racketeering activity.

53.

As a direct and proximate result, Plaintiff was injured in its business and property.

54.

Specifically, Plaintiff was disparaged in the course of the scheme at issue. Plaintiff had previously been awarded a consistent stream of projects from Company A that began to dwindle once the scheme alleged above began to take root.

55.

Plaintiff can demonstrate that its receipts from Company A have steadily declined such that in 2025 receipts from Company A were $0.

56.

The precipitous decline tracks the scheme by Descant and the project manager of

11

Company A.

57.

The scheme between those two perpetrators commenced in 2023.

58.

Plaintiff's sales to Company A from 2022 to 2023 dropped by 69%. Plaintiff's sales to Company A from 2022 to 2024 reflect a drop of 94%.

59.

The scheme involved repeated acts of wire fraud and honest services fraud occurring over a period of at least three years.

60.

Each manipulated contract award constitutes a separate predicate act under RICO.

61.

The conduct is continuous and poses a threat of continued criminal activity absent intervention.

62.

But for Defendants' unlawful scheme, Plaintiff would have continued to be awarded a stream of installation contracts.

63.

Plaintiff suffered lost profits, loss of business opportunities, reputational harm, and other damages exceeding $800,000.

12

64.

Plaintiff's injury was directly and proximately caused by Defendants' pattern of racketeering activity.

65.

Defendants intentionally concealed the existence of the kickback arrangement.

66.

The concealment and manipulation distorted the competitive marketplace and deprived Plaintiff of a fair opportunity to compete.

67.

At all relevant times, Defendants formed an "enterprise" within the meaning of 18 U.S.C. § 1961(4), consisting of an association-in-fact enterprise.

68.

The enterprise had a common purpose: to enrich Deep South Signs, Descant, and the project manager through corrupt contract steering.

69.

The enterprise functioned as a continuing unit with defined roles and relationships with the project manager serving as the person awarding the contracts and Deep South Signs and Descant increasing invoice costs, paying kickbacks to the project manager, and reaping profits from the awarded work.

13

70.

The enterprise engaged in and affected interstate commerce by participating in a multi-state scheme to rig bids and pay kickbacks for installation of commercial signs for a national sign company and its customers operating a various levels of interstate activity.  Defendants further utilized national financial institution's facilities and interstate courier services to transmit information regarding the scheme and pay.

71.

Plaintiff is entitled to recover pursuant to 18. U.S.C. § 1964(c)

## COUNT II:  VIOLATION OF 18 U.S.C. § 1962(d)

72.

Plaintiff re-alleges and incorporates the preceding paragraphs.

73.

Defendants knowingly agreed and conspired to conduct the affairs of the enterprise through a pattern of racketeering activity.

74.

Each Defendant knowingly agreed to facilitate the bid rigging and kickback scheme as did certain Nonparties which minimally include the project manager of Company A.

75.

Defendants' and the Nonparties' creation, support and maintenance of the bid rigging and kickback scheme is illegal and they have carried it out illegally.

76.

Defendants and the Nonparties had a meeting of the minds on the object or course of

14

action, specifically to create, support, and maintain the bid rigging and kickback scheme for their financial benefit.

77.

Each of the Defendants and the Nonparties have committed one or more overt acts to achieve or further the unlawful objects and purposes of the bid rigging and kickback scheme.

78.

The Defendants used false and fraudulent pretenses to deceive persons of ordinary prudence and due care, and made material nondisclosures and concealments of fact and information that were important to understand their bid rigging and kickback scheme.

79.

The Defendants conducted their affairs to unlawfully, intentionally, willfully and with intent to defraud, for their own financial gain and benefit and for the financial gain and benefit of others, to the detriment of Plaintiff.

**COUNT III: SHERMAN ACT**

80.

Plaintiff re-alleges and incorporates the preceding paragraphs.

81.

Defendants' scheme to fix prices, allocate customers, submit rigged bids and pay bribes violates the Sherman Act, 15 U.S.C. § 1.

82.

At all relevant times, Defendants were engaged in interstate trade and commerce within

the meaning of the Sherman Act, including the bidding, brokering, and performance of sign installation contracts throughout the state of Louisiana and the Gulf South.

83.

Specifically, Defendants (1) engaged in a bid rigging kickback conspiracy, at least with the project manager of Company A, but likely more market participants, (2) that restrained trade (3) in the particular market of commercial sign installation in Louisiana and other southern markets including Mississippi, Alabama, Texas and Arkansas.

84.

Beginning in 2023 and continuing through the present, Defendants knowingly entered into and engaged in a contract, combination, or conspiracy in unreasonable restraint of trade, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

85.

The conspiracy consisted of an agreement and concerted action among Defendants to rig bids, pay bribes and allocate contracts by, among other things:

a. Coordinating and prearranging the submission of bids for commercial sign installation projects;

b. Agreeing that Defendants would submit artificially inflated, noncompetitive, or "cover" bids to ensure that Defendant Deep South would win particular contracts;

c. Exchanging competitively sensitive information, including pricing, costs, and bid strategies; and

16

d. Utilizing the project manager to facilitate, communicate, and enforce the unlawful agreements.

86.

In furtherance of the conspiracy, Defendants also engaged in a scheme involving bribery and improper payments, whereby:

a. The project manager accepted payments, kickbacks, or other things of value from a competitor, the Defendants;

b. Such payments were made in exchange for steering contracts, manipulating bid processes, and ensuring favorable outcomes for the paying Defendant; and

c. The project manager used its position and relationships to influence the awarding of commercial sign installation contracts in accordance with the conspiratorial agreement.

87.

The acts and practices described herein constitute per se violations of Section 1 of the Sherman Act. Bid rigging, market allocation, and price fixing are inherently anticompetitive and lack any redeeming procompetitive justification.

88.

Defendants' conspiracy had the purpose and effect of suppressing and eliminating competition in the market for commercial sign installation contracts in Louisiana, Mississippi, Arkansas, Texas and Alabama.

89.

As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members

of the relevant market were harmed by, among other things:

a. Being deprived of the benefits of free and fair competition;

b. Losing business opportunities and contracts; and

c. Suffering other economic injuries.

90.

Defendants' conduct was knowing, willful, and constituted a conscious disregard for the rights of Plaintiff and the competitive process.

91.

Pursuant to 15 U.S.C. § 15, Plaintiff is entitled to recover treble damages, costs of suit, and reasonable attorneys' fees.

## COUNT IV: VIOLATION OF LUTPA (Louisiana Unfair Trade Practices Act, La. R.S. 51:1401 et seq.)

92.

Plaintiff re-alleges and incorporates the preceding paragraphs.

93.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. 51:1405(A).

94.

Defendants' conduct constitutes unfair methods of competition and unfair and deceptive acts or practices, including but not limited to:

a.  Paying and receiving undisclosed kickbacks in connection with competitive contract awards;

b. Secretly manipulating Company A's evaluation and award process;

c. Misrepresenting the fairness and impartiality of the bidding process;

d. Concealing conflicts of interest and breaches of fiduciary duty;

e. Distorting the competitive marketplace to exclude Plaintiff and others from fair competition.

95.

The kickback scheme violates established public policy against commercial bribery and corrupt business practices in Louisiana.

96.

The conduct was immoral, unethical, oppressive, unscrupulous, and substantially injurious to competitors, including Plaintiff.

97.

Plaintiff suffered ascertainable loss of money and property, including lost profits and lost business opportunities, as a direct and proximate result of Defendants' unfair and deceptive acts.

98.

Plaintiff is entitled to recover actual damages sustained as a result of Defendants' violations, which includes, but is not limited to loss of business opportunities and loss of profits.

99.

Defendants' conduct was intentional, knowing, and in bad faith, entitling Plaintiff to

recover attorneys' fees pursuant to La. R.S. 51:1409(A).

100.

Plaintiff further seeks injunctive relief prohibiting Defendants from continuing the unfair trade practices described herein.

**COUNT V: TORTIUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

101.

Plaintiff re-alleges and incorporates the preceding paragraphs.

102.

The Defendants improperly influenced others not to deal with the Plaintiff.

103.

Defendants intentionally and improperly interfered with Plaintiff's prospective contractual relations with Company A and others.

104.

Defendants did so with malice to Plaintiff as evidenced by the disparaging remarks made by Descant in his communications with the project manager of Company A.

105.

As discussed, Defendants' intentional acts proximately caused damaged to Plaintiff has evidenced by the clear decline in revenues received from Company A over the years.

106.

Defendants are liable to Plaintiff for these damages.

20

## COUNT VI: GENERAL LOUISIANA TORT LIABILITY

107.

Plaintiff re-alleges and incorporates the preceding paragraphs.

108.

La. Civ. Code Ann. art. 2315 provides that "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

109.

La. Civ. Code Ann. art. 2324 provides "He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."

110.

Defendants acts as defined above in conspiring at least with the project manager of Company A, but likely with other market participants, to bid rig and steer contracts to Defendant Deep South Signs thorough bribery and kickbacks have proximately damaged Plaintiff at a minimum in the amount of lost revenue for project from Company A not awarded to Plaintiff.

111.

Accordingly, Defendants are liable to Plaintiff for all such losses pursuant to Louisiana Civ. Code arts. 2315 and 2324.

## COUNT VII: INJUNCTIVE RELIEF

112.

Plaintiff re-alleges and incorporates the preceding paragraphs.

21

113.

Plaintiff has a substantial likelihood of success on the merits of its claims against Defendants; there is clear evidence that Defendants are engaging in unfair trade practices specifically geared to thwart competition and gain an unfair advantage.

114.

There is clear evidence that Defendants are engaging in wire fraud and a RICO conspiracy by bid rigging and paying kickbacks in the commercial sign installation market and specifically with at least one employee of Company A.

115.

There is a substantial threat that, unless the Court restrains Defendants' continued actions and conduct, Plaintiff will suffer immediate and irreparable injury for which there is no adequate remedy at law.

116.

Plaintiff is at a competitive disadvantage and quantifying with precision the full breadth losses will be difficult.

117.

Each lost opportunity brings the prospect of further business opportunity which will be deprived to the Plaintiff.

118.

Moreover, the threatened injury to Plaintiff in the absence of injunctive relief outweighs

the cost or threatened injury to Defendants which is minimal if the Court issues a temporary restraining order and further injunctive relief.

119.

The Defendants will merely have to forego unfair competing and violating the law.

120.

Finally, the granting of a temporary restraining order and further injunctive relief will not disserve the public's interest but rather serve it by enforcing compliance with state and federal law and with protecting the integrity of commerce.

**DEMAND FOR JURY TRIAL**

121.

Plaintiff demands trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in its favor and against Defendants as follows:

A.  Treble damages pursuant to 18 U.S.C. § 1964(c) and/or 15 U.S.C. § 15;

B. Actual damages under RICO, LUTPA, the Sherman Act, and the state law causes of action;

C. Attorneys' fees and costs under 18 U.S.C. § 1964(c) and/or 15 U.S.C. § 15 and/or La. R.S. 51:1409;

D. Pre- and post-judgment interest;

E. Injunctive relief prohibiting continued racketeering activity and unfair trade practices; and

F. All other relief deemed just and proper.

<div style="margin-left:50%">

Respectfully Submitted,
**COUHIG PARTNERS, LLC**

*/s/ Jonathan P. Lemann*
Robert E. Couhig, Jr., #4439
Ralph E. Wall, #22667
Jonathan P. Lemann, T.A. #26380
Blair C Constant, #33071
Kallen Forster, #41815
1100 Poydras Street, Suite 3250
New Orleans, Louisiana 70163
Phone (504) 588-1288
Telecopier (504) 588-9750

lemannjp@couhigpartners.com
kforster@couhigpartners.com

*Attorneys for Plaintiff, TTA Services LLC*
*d/b/a Thunderbolt Signs*

</div>

24

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| TTA SERVICES LLC d/b/a | |
| THUNDERBOLT SIGNS | |
| **Plaintiff** | **CASE NO.** |
| **v.** | |
| DEEP SOUTH SIGNS LLC and | |
| MORGAN DESCANT | **JUDGE** |
| **Defendants** | **MAGISTRATE** |

## VERIFICATION

Before me, the undersigned Notary Public, duly commissioned and qualified in and for the

State of Louisiana, personally came and appeared:

Eugene F. Bagot III

who, after first being duly sworn and deposed, stated that the allegations contained in the

Verified Complaint are true and correct, to the best of his knowledge, information, and belief.

WITNESSES:                                              AFFIANT:

_____                    _____

_____                    _____

SWORN AND SUBSCRIBED BEFORE ME THIS 2____DAY OF ___April___, 2026

_____
Jonathan P. Lemann, Notary Public

28